ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| OLGA MÉNDEZ OLIVIERI, Recurrente, v. JUNTA DE DIRECTORES y CONSEJO DE TITULARES DEL CONDOMINIO SURFSIDE MANSIONS, Recurrida. | KLRA202400035 | REVISIÓN procedente del Departamento de Asuntos del Consumidor. Querella núm.: C-SAN-2022-0012906. Sobre: condominios. |

Panel integrado por su presidente, el juez Hernández Sánchez, la jueza Romero García y la jueza Martínez Cordero.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 28 de febrero de 2024.

La parte recurrente del título presentó su recurso el 25 de enero de 2024. En él planteó un solo error presuntamente cometido por el Departamento de Asuntos del Consumidor (DACo); a decir, la desestimación de su querella por razón de no haber notificado, dentro del término concedido por la agencia, si había llegado o no a un acuerdo transaccional con la parte recurrida, allí querellada.

Por los fundamentos que expondremos, revocamos la *Resolución* emitida y notificada el 21 de noviembre de 2023, y ordenamos la continuación de los procedimientos administrativos ante el DACo.

I

El 23 de noviembre de 2022, la señora Olga Méndez Olivieri (señora Méndez o recurrente) instó por derecho propio una querella ante el DACo en contra de la Junta de Directores, el Consejo de Titulares, y otros miembros de los primeros, del Condominio Surfside Mansions, que ubica en el área de Isla Verde, Municipio de Carolina.

La señora Méndez adujo, en síntesis, que era la propietaria del apartamento núm. 1402 de dicho condominio y que, desde finales de 2020, había realizado múltiples esfuerzos por recabar de la Junta y del Consejo

Número identificador

SEN2024_____

la reparación y corrección de ciertos daños sufridos como consecuencia del paso del huracán María por Puerto Rico[1].

El 8 de febrero de 2023, la Junta de Directores y el Consejo de Titulares del condominio presentaron su *Contestación a Querella*[2]*.* En términos generales, la Junta y el Consejo negaron los hechos de la querella. En su lugar, plantearon que las quejas de la señora Méndez sí habían sido atendidas y que estaban en la mejor disposición de reparar las grietas que exhibía su apartamento, siempre y cuando estas fueran de naturaleza estructural en una pared comunal. De otra parte, adujeron como defensa afirmativa, entre otras, que la señora Méndez se había negado a permitir la inspección del área afectada por el ingeniero estructural contratado por la parte querellada.

El 1 de agosto de 2023, el técnico de inspección del DACo, señor Edgardo Amador Acevedo, acudió al apartamento de la señora Méndez y realizó la inspección del área afectada. A dicha inspección comparecieron la señora Méndez; en representación de la Junta, el señor Alejandro Franco Fernández; y, el administrador del condominio, señor John Benjamin[3].

Como parte de sus hallazgos, el inspector Amador concluyó como sigue:

> De la visita de inspección realizada se desprende que el condominio donde está ubicado el apto. 1402 tiene problemas de humedad donde al presente se está manifestando oxidación en marco de ventana, tipo guillotina cuarto master, con un visible deterioro en todo el marco con rasgo de hongo, humedad y descacaramiento [*sic*] de pintura en pared comunal.
>
> De igual forma el área de comedor con marco tipo sliding Windows [*sic*], de aproximadamente 6' de altura x 144" de largo, presenta en todo el techo y marco lateral, con rasgos de moho y descascaramiento [*sic*] de pintura por las constantes filtraciones en pared comunal.

---

[1] Se trataba de daños estructurales a la pared comunal, que, a su vez, provocaban grietas y filtraciones en la habitación principal del apartamento de la señora Méndez. Además, en su querella, la señora Méndez reclamó por los gastos incurridos en la contratación de un plomero para solucionar un problema con la llave de paso del agua de su apartamento. Por último, también reclamó el pago de $5,000.00, en concepto de daños, y por el sufrimiento y angustias mentales sufridas. *Véase*, apéndice del recurso, a las págs. 37-44.

[2] *Íd.*, a las págs. 26-33.

[3] Véase, *Informe de Inspección [de] Construcción*, apéndice del recurso, a las págs. 22-25.

El inspector Amador recomendó que las correcciones se realizaran lo antes posible y estimó el costo en $15,444.00[4]. En sus observaciones[5], el inspector añadió que:

> Querellante ha dado amplia oportunidad a querellado de reparar y corregir las deficiencias y daños en el interior y exterior del apto., mediante múltiples comunicaciones verbales y escritas.
>
> Sin embargo, al día de la inspección[,] las partes tuvieron oportunidad de diálogo plenamente [*sic*] y acordaron ponerle fin a la controversia con el abogado del seguro triple S, aclarando los pasos correspondientes para comenzar lo antes posible las mejoras necesarias, eliminar las filtraciones, la constante humedad existente y daños sufrido[s] en el interior, pintura a la propiedad en áreas cuarto master y comedor.
>
> El incumplimiento por la parte querellada se procederá acción a seguir [*sic*].

En cuanto a la acción a seguir, el inspector Amador sugirió la alternativa de una vista administrativa[6]. El 28 de agosto de 2023, notificó a las partes copia del informe de inspección

El 12 de septiembre de 2023, la Junta y el Consejo presentaron una *Moción objetando informe de inspección de DACO*[7], en la que plantearon que se podían tomar otras medidas correctivas menos costosas para el condominio. Subrayaron que sus objeciones no incidían en su interés en llegar a un acuerdo con la señora Méndez.

El 4 de octubre de 2023, el DACo celebró una vista a la que compareció la señora Méndez, **representada por abogado**, y los querellados, también por conducto de abogado. Luego de discutidos varios asuntos; entre ellos, que la Junta y el Consejo proponían a la señora Méndez reparar, sellar, pintar y resanar las áreas afectadas, la jueza administrativa concedió a las partes un término de 30 días para informar si habían llegado a un acuerdo. **Si ese acuerdo no se alcanzaba, la jueza citaría a una vista administrativa**. **También les apercibió de que, si**

---

[4] *Véase*, apéndice del recurso, a la pág. 24.

[5] *Íd.*, a la pág. 25.

[6] *Íd.*

[7] *Íd.*, a las págs. 18-19.

**omitían notificarle en el término dispuesto, ordenaría el cierre y archivo de la querella**[8].

Transcurrido el término de 30 días concedido, el 21 de noviembre de 2023, notificada en esa misma fecha, el DACo emitió la *Resolución* objeto de este recurso[9]. La jueza administrativa consignó que había transcurrido en exceso de 15 días el término de 30 días concedido, sin haber recibido moción alguna sobre si había mediado o no un acuerdo, por lo que, conforme había advertido, ordenaba el cierre y archivo de la querella instada por la señora Méndez.

Inconforme, el 11 de diciembre de 2023, la señora Méndez presentó oportunamente una solicitud de reconsideración[10]. Apoyada en las decisiones del Tribunal Supremo de Puerto Rico relacionadas con la imposición de sanciones progresivas previo a recurrir al mecanismo extremo de la desestimación, así como en la Regla 23 del *Reglamento de Procedimientos Adjudicativos* del DACo, Reglamento Núm. 8034 de 14 de junio de 2011, la señora Méndez solicitó que el DACo dejara sin efecto su *Resolución* de cierre y archivo. Además, solicitó que se le concediera un término adicional de 30 días para informar sobre el resultado de las conversaciones transaccionales.

Transcurrido en exceso el término para acoger o denegar la solicitud de reconsideración, el DACo no se expresó, por lo que la señora Méndez instó este recurso el 25 de enero de 2024. Como único señalamiento de error, apuntó:

> Erró el Departamento de Asuntos del Consumidor al desestimar la querella de la Sra. Méndez por un primer incumplimiento con la orden de informar las conversaciones transaccionales llevadas a cabo entre las partes.

(Énfasis omitido).

---

[8] *Véase*, apéndice del recurso, a las págs. 14-15. Esta *Resolución* fue notificada a las partes el **6 de octubre de 2023**.

[9] *Íd.*, a las págs. 11-13.

[10] *Íd.*, a las págs. 6-10.

El 26 de enero de 2024, emitimos una *Resolución* y, conforme a lo dispuesto en la Regla 63 del Reglamento de este Tribunal, 4 LPRA Ap. XXII-B, concedimos a la parte recurrida hasta el **lunes, 26 de febrero de 2024**, para presentar su oposición. Transcurrido el término concedido, la parte recurrida no compareció.

Evaluado el recurso de la recurrente y los documentos pertinentes que unió al mismo a la luz del derecho aplicable, revocamos la determinación del DACo.

II

A

La norma reiterada en innumerables ocasiones es a los efectos de que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues son estos los que cuentan con el conocimiento experto de los asuntos que les son encomendados. *Super Asphalt v. AFI y otro*, 206 DPR 803, 919 (2021). Además, al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad de la actuación de la agencia. *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013). Debido a que toda sentencia o determinación administrativa está protegida por una presunción de corrección y validez, la parte que acude a este Tribunal de Apelaciones tiene el deber de colocar a este foro en posición de conceder el remedio solicitado. *Morán v. Martí,* 165 DPR 356, 366 (2005).

A su vez, el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo; y, (3) si las conclusiones de derecho fueron correctas. *Asoc. FCIAS. v. Caribe Specialty II*, 179 DPR 923, 940 (2010).

Así pues, como norma general, las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no

produzca evidencia suficiente para derrotarlas". *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006). Por ello, la revisión judicial ha de limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, irrazonable, o fuera del marco de los poderes que se le delegaron. *Torres v. Junta Ingenieros*, 161 DPR 696, 708 (2004).

De otra parte, las conclusiones de derecho de las agencias administrativas serán revisables en toda su extensión. *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1003 (2011); *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 941 (2010). Sin embargo, esto no significa que los tribunales podemos descartar libremente las conclusiones e interpretaciones de la agencia. *Otero v. Toyota*, 163 DPR 716, 729 (2005).

En fin, como ha consignado el Tribunal Supremo, la deferencia concedida a las agencias administrativas únicamente **cederá cuando**: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otro*, 206 DPR, a la pág. 819, que cita a *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

B

El Reglamento del DACo Núm. 8034 de 14 de junio de 2011, intitulado *Reglamento de Procedimientos Adjudicativos* (Reglamento 8034), expone claramente que su propósito "es asegurar la **solución justa, rápida y económica de las querellas** presentadas ante o por el Departamento y proveer un procedimiento uniforme para su adjudicación." Regla 1 (énfasis nuestro). Ese es el espíritu que las conforman y las guían.

De otra parte, la Regla 24 del Reglamento 8034 dispone que, si bien las Reglas de Procedimiento Civil y las de Evidencia de Puerto Rico no

serán de estricta aplicación a las vistas administrativas, si el funcionario que preside la vista lo estima necesario, dichos cuerpos reglamentarios podrán ser aplicados "para llevar a cabo los fines de la justicia".

Adicionalmente, y compatible con ese procedimiento justo, rápido y económico que debe permear el procedimiento adjudicativo ante el DACo, la Regla 23 del Reglamento 8034 dispone como sigue:

> **Cuando una parte dejare de cumplir con un procedimiento establecido en este reglamento, o una orden del Secretario, el Funcionario, Secretario o Panel de Jueces que presida la vista administrativa podrá a iniciativa propia o a instancia de una parte imponer una sanción económica a favor del Departamento o de cualquier parte**, que no excederá de doscientos (200) dólares por cada imposición separada a la parte o a su abogado, si este último es responsable del incumplimiento. **Si la parte sancionada incumple con el pago de la sanción se podrá ordenar la desestimación de su querella si es el querellante** o eliminar las alegaciones si es el querellado.

(Énfasis nuestro).

La Regla 23 citada es compatible con la Regla 39.2 de las de Procedimiento Civil, 32 LPRA Ap. V, la cual establece la facultad discrecional de los tribunales para imponer sanciones económicas a las partes, así como para desestimar una demanda o eliminar las alegaciones, cuando no se ha cumplido con las referidas Reglas o con cualquier orden emitida por el tribunal.

Así también, la Regla 37.7 de las de Procedimiento Civil provee para la imposición de las sanciones que el Tribunal de Primera Instancia entienda pertinente con el fin de mantener el debido control en el manejo de los casos, y así evitar indebidas dilaciones, incumplimientos de las partes litigantes y conductas inapropiadas que afecten el trámite judicial. J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da. Ed., Estados Unidos de Norte América, Publicaciones JTS, 2011, T. III, pág. 1120-1121.

Por lo tanto, la doctrina al respecto establece que, si un tribunal estima que las actuaciones de una parte involucrada en un pleito están entorpeciendo los procedimientos, este tendrá amplia facultad para prohibir, sancionar o castigar este tipo de conducta o actitud. *Rivera v. Insular Wire Products Corp.*, 140 DPR 912, 930 (1996).

Ello responde al hecho de que, "[c]omo regla general, los tribunales están obligados a desalentar la práctica de falta de diligencia e incumplimiento con las órdenes del tribunal mediante su efectiva, pronta y oportuna intervención". *Mejías et als. v. Carrasquillo et als.*, 185 DPR 288, 298 (2012). No obstante, esta discreción debe ejercerse de manera juiciosa y apropiada[11].

A tales efectos, la Regla 39.2(a) de las de Procedimiento Civil, 32 LPRA Ap. V, dispone un procedimiento de sanciones progresivas[12] previo a que el tribunal ordene la drástica medida de desestimar una demanda. Es decir, en su parte pertinente, la Regla establece que, cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones tan solo procederá después que el tribunal, **en primer término, haya apercibido al abogado o abogada de la parte** de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el tribunal procederá a **imponer sanciones al abogado o abogada** de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que la misma no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones. No obstante, aun en esa situación, la Regla exige que el tribunal le conceda a la parte un término

---

[11] Entendemos pertinente señalar que el adecuado ejercicio de la discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013). El Tribunal Supremo ha definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Íd.*, a la pág. 435 (cita suprimida). Por ello, la discreción "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". *Íd.* (cita suprimida). Estos principios, en lo que concierne al recurso ante nos, pueden y deben ser aplicados con la misma rigurosidad a la oficial examinadora o a la jueza administrativa en este caso.

[12] Apuntamos que el Reglamento Núm. 8034 del DACo fue aprobado el 14 de junio de 2011. A esa fecha, ya habían entrado en vigor las Reglas de Procedimiento Civil de 2009. A su vez, ya desde la aprobación de la Ley Núm. 493-2004, se había enmendado la Regla 39.2 de las de Procedimiento Civil de 1979 para incorporar la jurisprudencia del Tribunal Supremo de Puerto Rico, a los efectos de que **la desestimación como sanción procedía únicamente cuando quedase demostrado, inequívocamente, que otras sanciones habían sido ineficaces**. De hecho, ya en *Mun. de Arecibo v. Almac. Yakima*, 154 DPR 217, 222-223 (2001), el Tribunal Supremo había establecido que, si la acción disciplinaria no surtía efectos positivos, nuestro ordenamiento exigía el apercibimiento a la parte de la situación y las consecuencias que pudiera acarrear no corregirla.

razonable para corregir la situación, que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término.

El fin perseguido por la Regla 39.2(a) de las Reglas de Procedimiento Civil resulta compatible con el principio recogido en nuestro ordenamiento jurídico que favorece que los casos se ventilen en sus méritos. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 591 (2011). Ello así, pues todo proceso adjudicativo se apoya en los valores superiores de hallar la verdad y hacer justicia. *Valentín v. Mun. de Añasco*, 145 DPR 887, 897 (1998). Por otro lado, precisa mencionar que el derecho a presentar prueba que sustente una reclamación es eje central del debido proceso de ley. *Íd.*[13] Por tanto, previo a afectar estos derechos, la sanción por parte del tribunal debe estar plenamente justificada. *Íd.*

### III

En nuestro ordenamiento jurídico, los tribunales tienen amplia discreción en la imposición de sanciones y el manejo de los casos ante su consideración. No obstante, una sanción drástica, como es la eliminación de unas alegaciones, se justifica únicamente en casos extremos en los que quede demostrado el desinterés y abandono del caso. *Arce v. Club*, 105 DPR 305, 307 (1976).

Así pues, la Regla 39.2(a) de Procedimiento Civil faculta al Tribunal de Primera Instancia a eliminar las alegaciones de la parte demandante luego de que haya apercibido al abogado o abogada y a la parte misma de las posibles sanciones, y le conceda una oportunidad para responder.

Si bien las Reglas de Procedimiento Civil no son de aplicación estricta al procedimiento administrativo, el espíritu de estas, y en particular de la Regla 39.2(a), está contenido en la Regla 23 del Reglamento 8034 del DACo. Esta exige claramente que, cuando una parte deje de cumplir con un procedimiento establecido en ese reglamento, o una orden del funcionario que presida la vista administrativa, este podrá, a iniciativa

---

[13] *Véase*, además, *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 889 (1993).

propia o a instancia de una parte, imponer una sanción económica a favor del Departamento o de cualquier parte, que no excederá de doscientos (200) dólares, a la parte misma o a su abogado, si este último es responsable del incumplimiento. Entonces, si la parte sancionada incumple con el pago de la sanción, el funcionario a cargo podrá ordenar la desestimación de la querella.

De los hechos ante nuestra consideración surge que la parte allí querellante, aquí recurrente, incumplió con la orden del foro administrativo que exigía la notificación de un acuerdo transaccional, o la ausencia de este, en un término de 30 días. Ello provocó el cierre y archivo de su querella.

Reconocemos que, al igual que los tribunales de justicia, la jueza administrativa del DACo goza de amplia facultad para prohibir, sancionar o castigar aquel tipo de conducta o actitud que entorpezca los procedimientos ante sí. No obstante, ello no implica que, en abierta violación a la Regla 23 del Reglamento 8034 del DACo, esté en libertad de desestimar la querella, sin antes haber sancionado a la querellante misma o a su abogado. El mero hecho de haber apercibido a las partes de que el incumplimiento con su orden conllevaría el cierre y archivo de la querella no subsana tal violación a la Regla 23.

Por tanto, a la luz de los hechos particulares de este caso, concluimos que el foro administrativo abusó de su discreción e incidió al ordenar la desestimación de la querella instada por la señora Méndez, sin antes haberle impuesto una sanción a ella o a su abogado. Una sanción tan drástica como esta solo debe utilizarse en aquellas ocasiones en que la parte sancionada haya sido contumaz o haya actuado de manera intencional.

IV

Por los fundamentos antes expuestos, revocamos la *Resolución* dictada y notificada por el DACo, por conducto de la jueza administrativa, el 21 de noviembre de 2023. Devolvemos la causa administrativa ante

dicho foro para la continuación de los procedimientos cónsono con lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones